ORIGINAL

16 MAG 2965

Approved: [signature]
JASON A. RICHMAN
Assistant United States Attorney

U.S. DISTRICT COURT FILED MAY 06 2016 S.D. OF N.Y.

Before: THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA : **SEALED COMPLAINT**

- v. - : Violation of 18 U.S.C. § 1349

JOSEPH GROSSMANN, : COUNTY OF OFFENSE: NEW YORK

Defendant. :

- - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

ANTOINETTE GUZMAN, being duly sworn, deposes and says that she is a Criminal Investigator with the United States Attorney's Office("USAO"), and charges as follows:

COUNT ONE
(Conspiracy to Commit Wire Fraud)

1. From at least in or about August 2010 up to and including in or about August 2015, in the Southern District of New York and elsewhere, JOSEPH GROSSMANN, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and an object of the conspiracy that JOSEPH GROSSMANN, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.



(Title 18, United States Code, Section 1349.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I have been involved in the investigation of the offenses charged in this Complaint. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents, and from my conversations with other law enforcement agents and other individuals. Because this affidavit is submitted for the limited purpose of demonstrating probable cause, I have not included details of every aspect of the investigation. Where I relate statements, conversations, and actions of others, those statements, conversations, and actions are related in substance and in part, except where otherwise noted.

**The Fraud**

4. As set forth in greater detail below, this investigation involves a fraudulent scheme through which JOSEPH GROSSMANN, the defendant, deceived the New York State Local and Employees' Retirement System ("NYSLERS") into believing that a deceased former employee of New York State ("Pensioner-1") was alive and entitled to continued pension payments (the "Pension Payments"). GROSSMANN then defrauded NYSLERS into depositing the Pension Payments into a bank account under GROSSMANN's control. Between the time of Pensioner-1's death on or about August 5, 2010 and in or about August 2015, GROSSMANN fraudulently collected approximately 61 Pension Payments totaling approximately $130,624.

**The New York State and Local Employees' Retirement System**

5. Based on my knowledge and experience derived from this investigation and from my participation in prior investigations, I have learned the following, in part and among other things:

a. There are two public retirement systems administered by the Office of the New York State Comptroller: the New York State Police and Fire Retirement System and the New York State Employees' Retirement System ("ERS"). Collectively, the two retirement systems are known as the NYSLERS.

b. ERS is a cost-sharing, multiple-employer defined benefit pension system providing service and disability retirement benefits, as well as death benefits, to employees of certain participating New York public employers.

c. Upon retirement, eligible ERS retirees must select from a set of options for how they will have their retirement benefits paid. For example, a retiree can choose the single life allowance ("SLA") option, which provides the maximum benefit payment to the retiree each month for the rest of the retiree's life. When a retiree who has selected the SLA option dies, all pension payments cease.

**Pensioner-1's Retirement from the New York State Government**

6. Based on my participation in this investigation, including my conversations with others concerning records maintained by ERS and my review of records maintained by ERS, I have learned the following, in part and among other things:

a. Pensioner-1 was employed by New York State starting on approximately September 4, 1970. Pensioner-1 held a variety of positions during the course of her employment.

b. Effective on or about April 1, 1998, Pensioner-1 was granted a New York State disability retirement because of an injury suffered while performing her employment responsibilities (the "Retirement").

c. In Advance of the Retirement, Pensioner-1 submitted a Retirement Option Election Form to ERS in which Pensioner-1 selected the SLA retirement option: "I elect to receive the maximum lifetime retirement allowance payable to me. Stop all payments at my death. I understand that under this option I can not elect a beneficiary." Pensioner-1 listed her brother (an individual other than JOSEPH GROSSMANN, the defendant) as the pension beneficiary. On or about March 1, 1999, Pensioner-1 submitted a second Retirement Option Election Form. Again, Pensioner-1 selected the SLA retirement option, and, this time, Pensioner-1 did not list any beneficiary.

d. Pensioner-1 began receiving pension payments from New York State on or about February 1, 1999. The first payment that Pensioner-1 received was approximately $1,740.00. Starting on or about April 30, 1999, Pensioner-1 received a monthly pension payment by electronic deposit or mailed check.

**The Death of Pensioner-1 and GROSSMAN's Fraud**

7. Based on my participation in this investigation, including my conversations with others concerning records maintained by records maintained by the Probate Court in Kewshaw County, South Carolina (the "Probate Court")and my review of records maintained by the Probate Court, I have learned the following, in part and among other things:

a. A death certificate (the "Death Certificate") establishing Pensioner-1's death has been filed with the Probate Court and lists the social security number, date of birth, and place of death of Pensioner-1, among other details. JOSEPH GROSSMANN, the defendant, is listed on the Death Certificate as the "informant" and as a family member of Pensioner-1. The date of death is listed as August 5, 2010.

b. On or about November 2, 2010, an application for appointment (the "Appointment Application") was filed by GROSSMANN with the Probate Court. The Appointment Application requested the appointment of GROSSMAN as the Personal Representative of Pensioner-1's estate. The Appointment Application lists GROSSMANN as Pensioner-1's brother, is signed by GROSSMANN, and is notarized.

c. The Appointment Application was approved by a Judge of the Probate Court on or about November 2, 2010, and GROSSMANN signed a "statement of acceptance" as Personal Representative of Pensioner-1's estate on that same day.

8. Based on my participation in this investigation, including my conversations with others concerning records maintained by ERS and my review of records maintained by ERS, I have learned the following, in part and among other things:

a. In or about the fall of 2010, ERS learned that Pensioner-1 appeared on the United States Social Security Death Index as having been reported deceased.

b. In an effort to verify whether Pensioner-1 was deceased, and thus no longer eligible for pension payments, or about September 3, 2010, ERS mailed a letter to Pensioner-1 at Pensioner-1's last known address of record. ERS did not receive a response to this communication.

c. On or about October 4, 2010, ERS mailed a second letter to Pensioner-1 at a second address associated with Pensioner-1 (the "October 4 Letter"). Among other things, the October 4 Letter informed Pensioner-1 that ERS was seeking to confirm that Pensioner-1 was still alive, and informed Pensioner-1 that Pensioner-1's pension payments could be made by direct deposit if Pensioner-1 was still alive and eligible.

d. On or about October 8, 2010, a female identifying herself as Pensioner-1 called ERS and explained that she was going to respond to the October 4 Letter and would further be providing paperwork showing that her "brother" had been granted her power of attorney.

e. On or about November 12, 2010, ERS received a written response to the October 4 Letter (the "November 12 Response"). Among other things, the November 12 Response included a copy of the Appointment Application naming GROSSMANN the "personal representative" of Pensioner-1's estate. This copy of the Appointment Application, however, omitted the portions containing anything concerning the death of Pensioner-1. The November 12 Response also included a completed direct deposit enrollment form, requesting that future Pension Payments be electronically remitted to an account ("Account-1") at the Mid-Carolina Credit Union ("MCCU"). The November 12 Response purported to be signed by both GROSSMANN and Pensioner-1.

9. Based on my participation in this investigation, including my conversations with others concerning records maintained by MCCU and interviews of MCCU employees, and my review of MCCU records, I have learned the following, in part and among other things:

a. Account-1 was opened by JOSEPH GROSSMANN, the defendant, on or about September 17, 2010.

b. On or about September 21, 2010, approximately six weeks after her reported death, Pensioner-1 was added to Account-1 as a joint or other authorized user of Account-1.

c. Since Pensioner-1's death, approximately 57 Pension Payments totaling $121,814.92 were made by ERS, via the United States Automated Clearing House ("ACH") network, to Account-1. Another four Pension Payments totaling $8,809.23 were made by check. Monthly ERS benefit payments are made from

funds held at ERS's bank account at a bank located in the vicinity of New York, New York.

d. MCCU employees know GROSSMANN to routinely withdraw the Pension Payments from Account-1 shortly after the Pension Payments are deposited. Further, surveillance photographs taken at MCCU branches on or about March 31, 2015, April 30, 2015, June 30, 2015, and July 31, 2015, at or around times that transactions involving Account-1 were occurring, show a man whom, based on my familiarity with this investigation, including my review of records maintained by the New York Department of Motor Vehicles, I believe to be GROSSMANN.

WHEREFORE the deponent respectfully requests that a warrant be issued for the arrest of JOSEPH GROSSMANN, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

ANTOINETTE GUZMAN
Criminal Investigator
United States Attorney's Office

Sworn to before me this
6th day of May 2016

THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK